UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert D. Press,

        Plaintiff,

        v.

Patrick J. Primavera,

        Defendant.

Civil Action No. 1:21-cv-10971

Hon. Jennifer L. Rochon, U.S.D.J.

**PLAINTIFF ROBERT D. PRESS'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT PATRICK J. PRIMAVERA'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Marc E. Kasowitz (mkasowitz@kasowitz.com)
Albert Shemmy Mishaan (amishaan@kasowitz.com)
Sondra D. Grigsby (sgrigsby@kasowitz.com)
Jeffrey Ephraim Glatt (jglatt@kasowitz.com)

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff Robert D. Press*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF PLEADED FACTS .............................................................................. 2

   I.    ROBERT D. PRESS AND THE TCA INVESTMENT MANAGER ............................... 2

   II.   PRESS HIRES PRIMAVERA TO LEAD THE TCA INVESTMENT MANAGER'S
   NEW YORK OFFICE AND MANAGE INVESTMENT BANKING FUNCTIONS.............. 3

   III.   PRESS LEARNS OF PRIMAVERA'S FRAUD AND MISCONDUCT ...................... 4

   IV.   PRIMAVERA DEFAMES PRESS TO COVER FOR HIS OWN FRAUD ................. 5

LEGAL STANDARD..................................................................................................... 6

ARGUMENT ................................................................................................................. 7

   I.    NEW YORK LAW APPLIES TO PRESS'S DEFAMATION CLAIM ........................... 7

   II.   REGARDLESS, PRIMAVERA'S MOTION FAILS UNDER NEW YORK, FLORIDA,
   AND NEW JERSEY LAW ..................................................................................... 9

      A.   The Absolute Privilege Does Not Apply To Primavera's Defamation ......................... 9

      B.   Absolute Privilege Is Not An Issue To Be Determined On A Motion To Dismiss ...... 16

      C.   Primavera's Extrinsic Evidence Is Inappropriate For A Motion To Dismiss ............... 17

      D.   This Court May Not Take Judicial Notice of Primavera's Extrinsic Evidence ........... 19

CONCLUSION............................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Able Energy, Inc. v. Marcum & Kliegman LLP*,
    69 A.D.3d 443 (1st Dept. 2010)................................................................11, 12

*Arko Plumbing Corp. v. Rudd*,
    230 So 3d 520 (Fla. Dist. Ct. App. 2017) ...........................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................7

*Ball v. D'Lites Enterprises, Inc.*,
    65 So. 3d 637 (Fla. Dist. Ct. App. 2011) .......................................................12

*Belya v. Hilarion*,
    2021 WL 1997547 (S.D.N.Y. May 19, 2021) .............................................16

*Carrera v. Major Energy Services*,
    LLC, 2016 WL 7183045 (D.N.J. Mar. 29, 2016) ....................................19

*Civ. Rights Corps v. Pestana*,
    2022 WL 1422852 (S.D.N.Y. May 5, 2022) .......................................6, 7

*Cont. Cas. Co. v. Hardin*,
    2016 WL 11234458 (M.D. Fla. Dec. 5, 2016).............................................18

*DelMonico v. Traynor*,
    116 So. 3d 1205 (Fla. 2013)................................................................13, 15

*Estape v. Seidman*,
    269 So. 3d 565 (Fla. 2d DCA 2009) .............................................................14

*In re Eur. Govt. Bonds Antitrust Litig.*,
    2022 WL 2168358 (S.D.N.Y. June 16, 2022) .........................................20

*Fariello v. Gavin*,
    873 So. 2d 1243 (Fla. 5th DCA 2004)....................................................14, 16

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
    339 F. Supp. 3d 383 (S.D.N.Y. 2018).........................................................10

*Frydman v. Verschleiser*,
    172 F. Supp. 3d 653 (S.D.N.Y. 2016)................................................10, 11, 12

*Gursky Ragan, P.A. v. Ass'n of Poinciana Villages, Inc.*,
314 So. 3d 594 (Fla. 2020)................................................................14

*Hawkins v. Harris*,
141 N.J. 207 (N.J. 1995).................................................................15

*Hill v. N.J. Dep't of Corr. Comm'r Fauver*,
342 N.J. Super. 273 (App. Div. 2001) ............................................15

*Holland v. JPMorgan Chase Bank, N.A.*,
2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019).................................22

*JNL Mgt., LLC v. Hackensack Univ. Med. Ctr.*,
2019 WL 1951123 (D.N.J. May 2, 2019) .......................................14

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021)...........................................7, 8

*Mangan v. Corp. Synergies Grp., Inc.*,
834 F. Supp. 2d 199 (D.N.J. 2011) ................................................16

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)...........................................................17

*Nolte v. Capital One Fin. Corp.*,
390 F.3d 311, 317 (4th Cir. 2004) .................................................21

*Parris v. New York City Hous. Auth.*,
364 F. Supp. 3d 284 (S.D.N.Y. 2019).............................................9

*Park Knoll Assoc. v. Schmidt*,
59 N.Y.2d 205, 210 (1983) ............................................................10

*Reserve Sols. Inc. v. Vernaglia*,
438 F. Supp. 2d 280 (S.D.N.Y. 2006).......................................7, 9, 16

*Rich v. Wachovia Bank N.A.*,
08-81575-CIV, 2009 WL 10699958 (S.D. Fla. Sept. 16, 2009)............19

*Sparrow Fund Management LP v. Mimedx Group, Inc.*,
2019 WL 1434719 (S.D.N.Y. March 31, 2019) ..............................12

*Stega v. New York Downtown Hospital*,
31 N.Y. 3d 661 (2018) ...................................................................11

*Thompson v. Ameriflex*,
2013 WL 866863 (S.D.N.Y. Mar. 7, 2013) ....................................21

*TMT Co. Ltd. v. JPMorgan Chase Bank*,
  *2018 WL 1779378* (S.D.N.Y. Mar. 28, 2018) ....................................................................7, 17

*United States v. Estate of Elson*,
  421 F. Supp. 3d 1 (D.N.J. 2019) ...........................................................................................19

**Other Authorities**

FRCP Rule 12(b)(6) ....................................................................................................6, 7, 16

FRE Rule 201 ......................................................................................................19, 20, 21

Plaintiff Robert D. Press ("Press" or "Plaintiff"), by his attorneys, Kasowitz Benson Torres LLP, respectfully submits this memorandum of law in opposition to Defendant Patrick J. Primavera's ("Primavera" or "Defendant") motion to dismiss the complaint ("Complaint" or "Compl.") (ECF No. 1).[1]

## PRELIMINARY STATEMENT

This case is straightforward.  Primavera, the former managing director of the New York office of TCA Fund Management Group Corp. ("TCA Investment Manager"), an international investment firm, maliciously submitted a false and defamatory declaration to the Securities & Exchange Commission ("SEC") in which he blamed Press, TCA Investment Manager's founder, for Primavera's own fraudulent conduct.  In his motion, Primavera *concedes* that the Complaint adequately pleads a defamation claim against him, but instead relies on impermissible extrinsic evidence to argue for dismissal under the doctrine of absolute privilege.  Primavera is wrong, and his motion should be denied.

*First*, New York law applies here, contrary to Primavera's argument.  All or substantially all of Primavera's wrongful conduct took place in New York, and is related to his work in, and the operations of, TCA Investment Manager's New York office.  Press also suffered enormous damage to his reputation in New York, the center of the financial world and where Press has conducted substantial business, as well as internationally.

*Second*, there is no basis to dismiss Press's defamation claim under any of New York, Florida, or New Jersey law in any event.  Absolute privilege, Primavera's sole asserted basis for dismissal, does not apply to Primavera's defamatory statement made to the SEC, as it was not a

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Complaint.  "Def. Br." refers to Primavera's Memorandum of Law In Support of Defendant's Motion to Dismiss, dated August 31, 2022 (ECF No. 28).

communication made in a "judicial or quasi-judicial proceeding." But even if a statement to the SEC was such a communication, which it is not, there is no privilege where, as here, Primavera's defamatory statements were made maliciously and for the sole purpose of harming Press.

*Third*, Primavera's assertion of a defense of purported absolute privilege is an issue of fact and not ripe for determination on a motion to dismiss. It is certainly not ripe for consideration where, as here, the Complaint abundantly sets forth facts demonstrating the falsity and maliciousness of Primavera's defamatory statements against Press.

*Finally*, the extrinsic evidence Primavera has submitted that supposedly supports his absolute privilege defense may not be considered on this motion to dismiss.

Each of the claims in the Complaint have been properly pled, and Primavera's motion should be denied in its entirety.

## SUMMARY OF PLEADED FACTS

For purposes of Primavera's motion to dismiss, well-pleaded facts in the Complaint, summarized here, are taken as true:

### I.   ROBERT D. PRESS AND THE TCA INVESTMENT MANAGER

Press's career spans more than three decades in finance. Compl. ¶ 15. During his extensive career, Press has been a principal in asset management, brokerage and investment banking companies, and has served on industry panels and as an officer and director of public and private companies. *Id.* Press's diverse background includes years of experience in structured finance, asset-backed lending, securitizations, and mergers and acquisitions, within the United States and Europe. *Id.*

Press is the founder and former Chief Executive Officer and director of TCA Investment Manager, an international investment firm headquartered in Aventura, Florida and with offices in New York, Las Vegas, London, England, and Melbourne, Australia. *Id.* ¶ 16. Press was the

owner of TCA Investment Manager at all relevant times. *Id.*

Under Press's leadership for a decade, TCA Investment Manager served as, among other things, an investment adviser to TCA's funds ("TCA Funds"), which include offshore and onshore funds serving as feeder funds to a master TCA fund. *Id.* ¶¶ 3, 17. As of November 30, 2019, TCA's master fund had approximately 470 investor accounts and a published net asset value of over $500 million. *Id.* ¶ 17. As the investment adviser of the TCA Funds, TCA Investment Manager provided portfolio management services to the TCA Funds and also had discretionary authority to invest the assets of the TCA Funds. *Id.* ¶ 18.

## II. PRESS HIRES PRIMAVERA TO LEAD THE TCA INVESTMENT MANAGER'S NEW YORK OFFICE AND MANAGE INVESTMENT BANKING FUNCTIONS

In or around July 2016, Press hired Primavera, who he believed to be duly qualified based upon his stated skills, abilities, knowledge, and experience, to be the Managing Director of the New York office of TCA Investment Manager. *Id.* ¶ 19. Primavera was hired following the decision by Press and other upper management to expand TCA Investment Manager's business into investment banking, a business unit that would operate out of TCA Investment Manager's New York office to assist clients with performing agreed upon investment banking services in exchange for a fee set forth in a written investment banking services agreement ("IBSA"). *Id.* ¶ 4. Primavera began his employment in or about September 2016 at a six-figure annual base salary, with additional compensation incentives including an annual discretionary six-figure bonus. *Id.* ¶ 19.

As Managing Director, Primavera was in charge of hiring, running, overseeing, and supervising a team of financial professionals responsible for, among other things, originating investment banking clients for TCA Investment Manager, and negotiating, drafting, and executing IBSAs with investment banking clients on behalf of the TCA Investment Manager. *Id.*

¶ 4.  One of Primavera's key responsibilities was to allocate each portion of the investment

banking fee to be paid by a client to a specific performance obligation, record and book the

investment banking fees earned by TCA Investment Manager for reporting to Press and upper

management, and prepare and issue invoices to investment banking clients for services rendered

by TCA Investment Manager.  *Id.* ¶ 5.  Primavera voluntarily departed in 2019, following four

years of the delivery of purported honest services to the TCA Investment Manager.  *Id.* ¶ 27.

### III.    PRESS LEARNS OF PRIMAVERA'S FRAUD AND MISCONDUCT

In or about early January 2020, Press received notice that two people from TCA

Investment Manager had filed a whistleblower complaint with the SEC.  *Id.* ¶ 28.  Shocked and

unaware of any underlying facts that could support any such complaint, Press had the TCA

Investment Manager immediately contact the SEC for details regarding the allegations and

instructed the TCA Investment Manager's lawyers to launch a side-by-side internal investigation

into TCA Investment Manager's accounting and reporting practices (the "Internal

Investigation").  *Id.*

The Internal Investigation revealed a troubled and fraudulent pattern of activity

orchestrated and perpetrated by Primavera.  *Id.* ¶ 29.  Contrary to what Primavera consistently

reported to Press and recorded in the TCA Investment Manager's books and records, there were

no material investment banking services provided by him or the employees he managed in the

New York office in 2017, 2018, or 2019.  *Id.*  Throughout his tenure as Managing Director of the

TCA Investment Manager's New York office, Primavera had intentionally misrepresented that

such services were being performed to the TCA Investment Manager's upper management,

including to Press.  *Id.* ¶ 30.  Specifically, Primavera made false and misleading

misrepresentations to Press regarding, *inter alia*, the productivity of the office, the department's

workflow, collectability of the investment banking fees, and that he was sending monthly

invoices to each investment banking client.  *Id.*  He also knowingly misrepresented investment banking fees collections and investment banking services performance on invoices and scope of work summaries.  *Id.*

## IV.   PRIMAVERA DEFAMES PRESS TO COVER FOR HIS OWN FRAUD

To cover for his own fraud, Primavera maliciously submitted a declaration to the SEC dated December 22, 2020 (the "Declaration") regarding his purported experiences while working as the Managing Director for the TCA Investment Manager's New York Office.  *Id.* ¶ 57.  In the Declaration, Primavera falsely and defamatorily blamed Press for Primavera's own fraudulent conduct.  *Id.*

In the Declaration, Primavera falsely and defamatorily informed the SEC that Press:  (i) was aware the TCA Investment Manager's New York office "did not have an investment banking department" and "never had any investment bankers on staff or anyone else who could provide the investment banking [s]ervices called for under the [IBSAs];" (ii) knew Primavera could not do any investment banking services work because Primavera "did not have investment banking experience"; (iii) had "constant discussions" with Primavera "about the New York Office not having the staff available to provide [investment banking] services to companies"; (iv) "would not close the [Investment Banking] Pipeline for the month until the middle of the following month because he wanted to include more deals"; (v) would assign a monetized value to be logged as investment banking services for the work the New York sales team and claimed he could value investment banking services as he saw fit and had Primavera calculate the value of the investment banking services on his own; (vi) and "was aware of the financial condition of the companies that signed [IBSAs] and knew most of the [investment banking] fees recorded were uncollectable."  *Id.* ¶ 66.  Additionally, Primavera made false and defamatory statements concerning Press, claiming that Press was responsible for determining the monetary value of the

investment banking services included in the Investment Banking Pipelines and not Primavera. *Id.* ¶ 67. Primavera also caused these false statements to be repeated to third parties. *Id.* ¶ 68.

Each of these statements was false and Primavera was aware the statements were false. *Id.* ¶ 58. Press specifically hired Primavera to run the New York office and ultimately tasked him with managing investment banking services and hiring the appropriate staff. *Id.* The investment banking services the TCA Investment Manager offered were limited merger-and-acquisitions work suited to the needs of its client base, and Primavera's experience running his own business should have prepared him to handle the job. *Id.* Primavera and his team purposefully kept Press and upper management in the dark -- lying about a former manager's continued involvement and misrepresenting the work and collections Primavera claimed he and his team had done in emails to Press as well as asking Press if more staff could be hired to deliver on the purportedly growing demand for the investment banking services. *Id.* Likewise, Press entrusted Primavera with valuing the investment banking services based upon the purported work Primavera and his team performed, and left booking the investment banking fees for those services to Primavera and the TCA accounting team. *Id.* ¶ 59.

Ultimately, Press, as the leader of TCA, was compelled to reach a settlement with the SEC, without admitting or denying any of the substantive allegations, in order to put this matter behind him. *Id.* ¶ 63.

## LEGAL STANDARD

"Rule 12(b)(6) provides for dismissal of a complaint for 'failure to state a claim upon which relief can be granted.'" *Civ. Rights Corps v. Pestana*, 2022 WL 1422852, at *2 (S.D.N.Y. May 5, 2022) (*quoting* Fed. R. Civ. P. 12(b)(6)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "This standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Civ. Rights*, 2022 WL 1422852, at *2 (*citing Iqbal*, 556 U.S. at 678). "A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible." *See id.* "However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently 'raise a right to relief above the speculative level.'" *Civ. Rights*, 2022 WL 1422852, at *2 (*citing Twombly*, 550 U.S. at 555).

To survive a motion to dismiss a defamation claim under Rule 12(b)(6), the Complaint must identify "(1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Reserve Sols. Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 289 (S.D.N.Y. 2006) (denying motion to dismiss defamation claim). "[E]vidence produced" by a defendant that "lies outside the allegations in the Complaint and is neither appended thereto nor incorporated therein by reference" is inappropriate for "consideration on a motion to dismiss." *TMT Co. Ltd. v. JPMorgan Chase Bank, 2018 WL 1779378*, at *4 (S.D.N.Y. Mar. 28, 2018).

## <u>ARGUMENT</u>

### I.   **NEW YORK LAW APPLIES TO PRESS'S DEFAMATION CLAIM**

Primavera incorrectly argues that Florida or New Jersey law, and not New York law, applies to Press's defamation claim. Def. Br. at 3-7. New York law clearly applies here as New York has "a more significant relationship to the issue or the parties." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 168 (S.D.N.Y. 2021) (applying New York defamation law instead of Florida law because (i) New York was the "location" which "was the subject" of the defamation, (ii) defendant, "domiciled in New Jersey," had limited ties to Florida and "strong ties to New York," where he "work[ed]," and (iii) the plaintiff did "not allege that [the]

defendant took any action whatsoever in Florida in connection with the alleged defamation").

All or substantially all of Primavera's wrongful conduct took place in New York, and is related to his work in, and the operations of, TCA Investment Manager's New York office. Compl. ¶¶ 4, 19-26, 55. Primavera attempts to avoid the import of this clear nexus to New York by arguing that because the SEC investigation was led by its Florida office, his libelous statements to the SEC make Florida the key jurisdiction for choice of law purposes. Def. Br. at 5, citing Compl. ¶¶ 62, 63, and 68. But the SEC is a national agency that is headquartered and sits in Washington, D.C., Press was not a party to the SEC action in Florida, and the activities to which Primavera's defamatory statements refer took place all or largely took place here, in New York. *Kesner*, 515 F. Supp. 3d at 168.

Moreover, the Complaint also alleges that Primavera "defamed Press to other third parties," separate and apart from his direct statements to the SEC (Compl. ¶ 8), resulting in enormous damage to Press's reputation in New York, the center of the financial world, where TCA had an office, as well as internationally. *See id.* ¶ 1.

Primavera claims that Florida law applies here because "that's where Mr. Press's fraud was perpetrated." Def. Br. at 4 (emphasis in original). This argument makes no sense. The Complaint concerns the statements Primavera made in New York in which he *fabricated* allegations of fraud against Press to cover up his own fraud, which Primavera also committed in New York. That Primavera now seeks to rely on the fictional story that he himself concocted to cover up his own fraud as a purported basis to change the governing law applicable here is Orwellian. The Complaint is a straightforward defamation claim *brought* by plaintiff Press against defendant Primavera, about the New York conduct of *Primavera*. Primavera's self-serving statement that "it is not this Defendant's conduct in New York … that is relevant" (*id*.) is

not only bizarre, but plainly false, and improperly ignores the governing allegations underpinning the Complaint. The conduct that is relevant is Primavera's conduct. Thus, it is Primavera, and not Press, who "attempts to turn the facts of the case on their head." *See id*.[2] New York law properly applies here.

## II.  REGARDLESS, PRIMAVERA'S MOTION FAILS UNDER NEW YORK, FLORIDA, AND NEW JERSEY LAW

Even though New York law clearly applies here, Primavera's motion fails under the law of any of New York, Florida, or New Jersey.

As an initial matter, Primavera concedes, as he must, that the Complaint (¶¶ 57-62) properly pleads all the elements necessary for a claim for defamation against Primavera. *See* Def. Br. at 1; *see also Reserve*, 438 F. Supp. 2d at 289 ("allegations … give [defendants] sufficient notice of the communications complained of and afford them an opportunity to defend themselves"); *Parris v. New York City Hous. Auth.,* 364 F. Supp. 3d 284, 291 (S.D.N.Y. 2019) ("Complaint contains sufficient factual allegations supporting [the defamation claim] to survive a motion to dismiss"). Instead, Primavera makes only one argument in support of his motion to dismiss: that his defamatory statements are protected by an absolute privilege because they were "provided to, and at the request of," the SEC "in connection with one or more investigations." Def. Br. at 5. Primavera's argument fails for several reasons.

### A. The Absolute Privilege Does Not Apply To Primavera's Defamation

Absolute privilege does not apply to Primavera's defamation at issue here under clear law of New York, Florida, and New Jersey.

---

[2] Primavera further attempts to turn the facts on their head by citing (Def. Br. at 4, n.1) extrinsic evidence that does not even mention Primavera. This extrinsic evidence, aside from being impermissible on this motion (*see infra,* Section II.C-D), is irrelevant to the only issue here, where *Primavera's* conduct occurred.

1. **New York Law Rejects Primavera's Arguments**

Under New York law, the "absolute privilege generally is reserved for communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings." *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 383, 387 (S.D.N.Y. 2018) (statements made in SEC filings are not protected by New York's absolute privilege). The privilege is a "narrow" exception to defamation law. *Id.*; *see Park Knoll Assoc. v. Schmidt*, 59 N.Y.2d 205, 210 (1983) ("As a matter of policy, the courts confine absolute privilege to very few situations.").

Primavera spills much ink and introduces voluminous extrinsic evidence, albeit impermissibly (*see infra*, Section II.C-D), simply to argue that Primavera's defamatory statements were made to the SEC "in connection" with an investigation. *See* Def. Br. at 5. This misses the point completely and misconstrues New York law.

Primavera's defamatory Declaration made to the SEC is not a communication made in a "judicial or quasi-judicial proceeding." *See Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 672-73 (S.D.N.Y. 2016) (statements made to SEC are not protected by absolute privilege). As Primavera's own improperly submitted extrinsic evidence itself proves, his defamatory statements were submitted voluntarily through SEC Form 1662 *after* the SEC action already settled. *See* Def. Br. at 6; Primavera Decl., Ex. A. They were certainly not made during any "proceeding" in front of the SEC. But even if a statement to the SEC in any context is considered such a communication, which the case law is clear it is not, there is no privilege where, as here, the defamatory statements "were made maliciously and solely for the purpose of harming the plaintiffs." *Frydman*, 172 F. Supp. 3d at 673.

The *Frydman* case is on point. In *Frydman*, the plaintiff alleged that his former business partner defamed him by sending a "whistleblower letter" to the SEC that accused plaintiff of

fraud. 172 F. Supp. 3d at 672-73. The defendant moved to dismiss the complaint and argued that the letter was "absolutely privileged" because it was "made in a judicial proceeding and to a regulator." *Id.* The court held otherwise and denied defendant's motion to dismiss, as "there is an exception to the general privilege for statements in judicial proceedings and communications to regulators where the statements are made maliciously and solely for the purpose of defaming the defendant." *Id.* (collecting cases). Here, as in *Frydman*, Press alleges that Primavera's statements in his Declaration to the SEC "were made maliciously and solely for the purpose of harming the plaintiff[]" in an effort to mask Primavera's own wrongdoing. *Id.*; *compare* Compl. ¶¶ 57, 62, 72-73 (Primavera "maliciously" made statements to harm and blame Press for Primavera's own fraudulent conduct).[3] Thus, regardless of whether Primavera made his statements in a "judicial proceeding," and he did not, the Complaint pleads a proper defamation claim because of the maliciousness of Primavera's statements.

Primavera's cases (Def. Br. at 8-9) further support Press's contention that Primavera's defamatory statements to the SEC are *not* privileged because they were motivated by malice. *See* Compl. ¶¶ 57, 62, 72-73. In *Stega v. New York Downtown Hospital*, 31 N.Y. 3d 661 (2018) (Def. Br. at 8), the court denied defendant's motion to dismiss plaintiff's defamation claim, as there was an issue of fact whether defendant's statement to governmental authorities was "motivated by malice." 31 N.Y.3d at 673. In *Able Energy, Inc. v. Marcum & Kliegman LLP*, 69 A.D.3d 443 (1st Dept. 2010) (Def. Br. at 8), the court found that defendant's statements were privileged but did not address allegations of malice made by plaintiff. 69 A.D.3d at 444

---

[3] Indeed, Primavera's own evidence proves his maliciousness: that his defamatory statements were submitted *voluntarily* through SEC Form 1662 *after* the SEC action already settled. *See* Def. Br. at 6; Primavera Decl., Ex. A.

(applying privilege to accounting firm's letter).[4]  The *Frydman* decision, however, expressly rejects *Able Energy*, finding that New York law clearly provides for "an exception" to the "general privilege" found in *Able Energy* for statements "made maliciously and solely for the purpose of defaming the defendant."  *Frydman*, 172 F. Supp. 3d at 672.

Thus, under well-established New York law, which applies here, *see supra* Section I, the absolute privilege is inapplicable to Primavera's defamation.

### 2.  <u>Florida Law Rejects Primavera's Arguments</u>

Under Florida law as well, Primavera's defamatory statements are only protected by an "absolute privilege" if made "in the course of a judicial proceeding."  *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 638 (Fla. Dist. Ct. App. 2011) ("website statements are not protected by absolute immunity given to statements made in judicial proceedings").  Defamatory statements *not* made in the course of a judicial proceeding, may only be protected (if protected at all) by a "qualified privilege."  *See Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 526 (Fla. Dist. Ct. App. 2017).  A "qualified privilege," however, does not apply where the defamatory statements were made with "malice."  *Id.*

Here, Primavera does not cite a case, nor is there any such case, that applies Florida law to hold that defamatory statements made to the SEC are considered made "in the course of a judicial proceeding" and thus absolutely privileged.  *See* Def. Br. at 6-7.  Thus, Primavera's

---

[4] One case cited by Primavera (Def. Br. at 9), *Sparrow Fund Management LP v. Mimedx Group, Inc.*, 2019 WL 1434719, at *9 (S.D.N.Y. March 31, 2019), did apply privilege to defendant's statements even where the complaint alleged that the statements were made with malice, but only because the complaint's "conclusory allegations" of malice were "not sufficient."  Here, by contrast, the Complaint provides support for its allegations of malice, including a detailed description of the circumstances under which Primavera maliciously blamed Press for Primavera's "own fraudulent conduct" (Compl. ¶ 57) in order "to avoid liability for his own wrongdoing" (*id.* ¶ 62).

defamatory statements could, at best, only be protected by a "qualified privilege," which does *not* apply here based on the Complaint's repeated allegations of facts demonstrating Primavera's malice. *See* Compl. ¶¶ 57, 62, 72-73.

A case from the Supreme Court of Florida and cited by Primavera (Def. Br. at 6), *DelMonico v. Traynor*, 116 So. 3d 1205, 1220 (Fla. 2013), actually demonstrates that Primavera's out-of-court defamatory statements made to the SEC are not protected by an absolute privilege. In *DelMonico*, plaintiff filed a defamation claim against an attorney of a defendant previously sued by plaintiff, alleging that the attorney made defamatory statements about plaintiff to potential "third-party witnesses" during "the course of his investigation" and "ex-parte interviews" of these potential witnesses. *Id*. The attorney claimed "absolute privilege." *Id*. The *DelMonico* court rejected the attorney's argument, holding that "defamatory statements … made during ex-parte, out-of-court questioning of potential, nonparty witnesses in the course of investigating [plaintiff's] underlying lawsuit" are not protected by the "absolute privilege." *Id*. "Florida's absolute privilege was never intended to sweep so broadly." *Id.* at 1218. Primavera's out-of-court defamatory Declaration, submitted voluntarily (*see supra,* Section II.A.1, n.3) to the SEC without even the knowledge of Press's attorneys, is certainly not afforded the absolute privilege as outlined in *DelMonico*.

Indeed, subsequent Florida case law citing *DelMonico* further clarifies that even defamatory statements made during an "examination under oath" of potential witnesses is not protected by the "absolute privilege" because such examination does not have "safeguards that protect" a defamed party "from harm." *Arko*, 230 So 3d at 526 (citing *DelMonico*). In other words, even such a sworn examination "does not have a mechanism for a defamed party to seek to impose sanctions in an expeditious way, and there is no process to strike the defamatory

matter from the record." *Id.* (emphasizing "the right of an individual to enjoy a reputation unimpaired by defamatory attacks"). Here too, Primavera's defamatory statements are not protected by the absolute privilege, as they were submitted in a Declaration to the SEC, without any method for Press to "strike the defamatory matter from the record."

The remaining Florida cases cited by Primavera actually *limit* the scope of the absolute privilege or are factually inapposite. *See Estape v. Seidman*, 269 So. 3d 565, 569 (Fla. 2d DCA 2009) ("absolute immunity for communications during judicial proceedings does not provide immunity to a psychotherapist"); *Gursky Ragan, P.A. v. Ass'n of Poinciana Villages, Inc.*, 314 So. 3d 594, 595 (Fla. 2020) ("we do not address whether the alleged defamatory statements [*i.e.*, disclosure of bar complaint] were published in the course of judicial proceedings" because defendant did not appeal that issue); *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 2004) (noting "immunity is an affirmative defense that should be pled by the party asserting it, and which may thereafter be considered after the facts are fleshed out by summary judgment or trial").

Thus, even under Florida law, which Primavera incorrectly argues (Def. Br. at 6) should apply here, *see supra* Section I, the absolute privilege is inapplicable to Primavera's defamation, and certainly cannot support a motion to dismiss.

### 3. New Jersey Law Rejects Primavera's Arguments

New Jersey law similarly holds that Primavera's defamatory statements are only absolutely privileged if "made in judicial or quasi-judicial proceedings." *JNL Mgt., LLC v. Hackensack Univ. Med. Ctr.*, 2019 WL 1951123, at *9 (D.N.J. May 2, 2019) (denying motion to dismiss defamation claim). Primavera does not cite a case, nor is there any such case, that applies New Jersey law to hold that defamatory statements made to the SEC are statements "made in judicial or quasi-judicial proceedings" and thus absolutely privileged. *See* Def. Br. at

As with Florida, each of the New Jersey cases cited by Primavera also actually *limit* the scope of the absolute privilege or are factually inapposite. *See Hill v. N.J. Dep't of Corr. Comm'r Fauver*, 342 N.J. Super. 273, 295 (App. Div. 2001) (holding statements made to the EEO and union representative in the course of an administrative proceeding and then used to initiate the disciplinary charges filed against plaintiff "do not implicate the litigation privilege"); *Hawkins v. Harris*, 141 N.J. 207, 222 (N.J. 1995) (noting "the litigation privilege is not, however, a license to defame" and that whether the statements made during litigation by private investigator of defendant "has some relation to the proceeding" and were privileged was not up on appeal and may not have been fully considered by the trial court).

Primavera's last-ditch attempt to salvage his privilege defense by arguing that, like the *DelMonico* case under Florida law, New Jersey law holds that "statements made in preparation for judicial and quasi-judicial proceedings are also privileged" (Def. Br. at 8), likewise fails. *First*, Primavera still does not cite any case – under Florida or New Jersey law – where the court held that SEC proceedings were judicial and quasi-judicial proceedings for purposes of privilege. Thus, even if Primavera's defamatory statements were made "in preparation" of the SEC proceeding, they are not afforded any privilege. *Second*, Primavera's citation to *DelMonico*, where the absolute privilege defense was rejected, is misleading. As explained *supra*, Section II.A.2, *DelMonico* supports Press's defamation claim here, as it held that defamatory statements, such as Primavera's Declaration to the SEC, even if made "in preparation" of an SEC proceeding, at best are only protected by a *qualified privilege*, which is inapplicable here due to Primavera's malice.

Accordingly, even under New Jersey law, which Primavera incorrectly argues (Def. Br.

at 7) might apply here "based on [Primavera's] residence," *see supra* Section I, the absolute privilege is inapplicable to Primavera's defamation.

### B. Absolute Privilege Is Not An Issue To Be Determined On A Motion To Dismiss

Primavera's motion should likewise be denied because under clear New York, Florida, and New Jersey law, absolute privilege is an issue of fact and not ripe for determination "at this stage" of the litigation. *See Belya v. Hilarion*, 2021 WL 1997547, at *6 (S.D.N.Y. May 19, 2021) (denying motion to dismiss defamation claim because the Court is "persuaded that it is at least plausible that the … privilege may be overcome"); *Reserve*, 438 F. Supp. 2d at 290 ("absolute privilege" is a "question of fact [that] cannot be resolved at this early stage of the proceedings"); *Fariello*, 873 So. 2d at 1245 ("immunity presents a fact intensive issue that should ordinarily not be resolved by a motion to dismiss");[5] *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 208 (D.N.J. 2011) (applying New Jersey law) (determining "privilege" is "not generally permitted in a Rule 12(b)(6) motion to dismiss").

The *Belya* case is instructive. The plaintiff in *Belya*, like Press here, asserted a claim for defamation. *Belya*, 2021 WL 1997547, at *3. The defendant, like Primavera here, moved to dismiss the complaint because "the statements, even if defamatory, are protected from liability pursuant" to "privilege." *Id*. The *Belya* court, however, rejected defendant's argument and denied defendant's motion to dismiss. *Id*. at *5-6. "In reaching this conclusion," the Court took "into account the principle that at this stage it must resolve doubts and ambiguities and draw reasonable inferences in the plaintiff's favor." *Id*. "At this early stage, the Court is persuaded that the allegations in the Complaint are sufficient to establish that Defendants plausibly acted with actual malice," even though the complaint only alleged "one factual statement that may

---

[5] Primavera himself must concede this point, as he cites *Fariello* approvingly. *See* Def. Br. at 7.

have been false and made by Defendants with the full knowledge of its falsity." *Id.*

The Complaint here alleges *far more* than a single false statement made by Primavera, and pleads facts demonstrating that Primavera made these statements with full knowledge of their falsity. *See* Compl. ¶ 58 ("Each of [Primavera's] statements was false and Primavera was aware the statements were false"); *see also id.* ¶¶ 2, 8, 57, 59, 61, 65-67, 71-73 (discussing "falsity" of Primavera's statements). Primavera's privilege argument is unripe for consideration at this stage, and thus, Primavera's motion should be denied for this reason as well.

### C. Primavera's Extrinsic Evidence Is Inappropriate For A Motion To Dismiss

Primavera also attempts to avoid denial of his motion to dismiss by heavily relying on extrinsic evidence. In particular, Primavera repeatedly cites (Def. Br. at 2-7), and relies upon, the following three exhibits attached to his motion:

- a complaint filed in the Southern District of Florida in the matter of *Securities and Exchange Commission v. TCA Fund Management Group Corp., et al.*, Index, No. 20-cv-21964 (Lawlor Decl., Ex. A) ("TCA Complaint");

- an Order from *In the Matter of Robert D. Press, Respondent*, Administrative Proceeding File No. 3-20610 (Lawlor Decl., Ex. B) ("Administrative Order"); and

- redacted emails between Primavera's attorney and SEC attorneys (Primavera Decl., Ex. A) ("Primavera Emails").

Primavera's attempt, however, fails. Under longstanding New York, Florida, and New Jersey law, Primavera's extrinsic evidence, which has no connection to the allegations of the Complaint, must be rejected for purposes of this motion, as detailed herein.

New York is clear that extrinsic evidence that "lies outside the allegations in the Complaint and is neither appended thereto nor incorporated therein by reference" is "inappropriate for consideration on a motion to dismiss." *TMT*, 2018 WL 1779378, at *4 (rejecting "evidence" that "lies outside the allegations in the Complaint"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (reversing grant of motion to dismiss

17

because "the district court erred in considering certain factual materials extrinsic to the complaint"). Here, Primavera does not dispute that his extrinsic evidence is neither mentioned nor appended to the Complaint, but merely argues that his extrinsic evidence may be considered because it is "integral" to the Complaint and was "relied" upon by Press when "framing" the Complaint. *See* Def. Br. at 2-3.

Primavera is wrong. The TCA Complaint introduced by Primavera makes no mention of either Press or Primavera (*see* Lawlor Decl., Ex. A), and thus was certainly not relied upon by Press when drafting the Complaint against Primavera which solely concerns defamatory statements made by Primavera against Press. Likewise, the Administrative Order, also introduced by Primavera, does not mention Primavera (*id.*, Ex. B), nor would it, as it solely concerns separate cease and desist proceedings against Press. Press thus could not have relied upon the Administrative Order when "framing" the Complaint.

Moreover, the Primavera Emails are especially inappropriate for consideration on Primavera's motion to dismiss. These emails, which Press did not have access to prior to this litigation, are not incorporated by reference into the Complaint, and are not "integral" to the Complaint in any way. To the contrary, these emails are highly peripheral to the Complaint as they refer to Primavera's defamatory Declaration without even setting forth the actual defamatory statements contained therein and at issue in this case. *See* Primavera Decl., Ex. A. This Court should thus reject this extrinsic evidence under clear New York law.

Florida law is no different, and also does not consider extrinsic evidence on a motion to dismiss. *Cont. Cas. Co. v. Hardin*, 2016 WL 11234458, at *12 (M.D. Fla. Dec. 5, 2016) (applying Florida law) ("there is no cogent reason for the court to exercise its discretion to take the unusual step of considering this extrinsic evidence on a motion to dismiss"). Indeed, Florida

has a higher standard than New York, requiring not only that the extrinsic evidence be "central to plaintiff's claim," but also that the extrinsic evidence be a document that is in the plaintiff's "possession," so that plaintiff may "confirm or deny their authenticity." *Rich v. Wachovia Bank N.A.*, 08-81575-CIV, 2009 WL 10699958, at *3 (S.D. Fla. Sept. 16, 2009) (denying motion to dismiss).

Here, not only is Primavera's extrinsic evidence not "central" to the Complaint, as explained *supra*, but the Primavera Emails are not in Press's possession to determine whether they are authentic and accurately set forth the entire conversation between the individuals on the emails. In fact, Primavera himself concedes that the Primavera Emails only include "[r]edacted versions of selected e-mails" (Def. Br. at 6, n.4), and thus do not necessarily reflect an accurate picture of the conversations contained therein. For this reason alone, this Court should reject Primavera's extrinsic evidence under Florida law as well.

Likewise, New Jersey law also has a high threshold for considering extrinsic evidence on a motion to dismiss. *United States v. Estate of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019) (applying New Jersey law) (denying motion to dismiss where motion "based on … extrinsic documents"). It is well established that New Jersey law requires the extrinsic evidence to either be "integral" to the complaint, or "*explicitly* relied on" in the complaint. *Carrera v. Major Energy Services*, LLC, 2016 WL 7183045, at *1 (D.N.J. Mar. 29, 2016) (emphasis added) (collecting cases). Here, as there is no dispute that the Complaint does not "explicitly" rely upon, *i.e.*, does not mention, any of Primavera's extrinsic evidence, this Court should deny Primavera's motion.

### D. This Court May Not Take Judicial Notice of Primavera's Extrinsic Evidence

Trying a back-door approach, Primavera argues that, based on FRE Rule 201, this Court should take "judicial notice" of his extrinsic evidence. Def. Br. at 2-6. Primavera is incorrect.

While a "court deciding a motion to dismiss may take judicial notice of certain documents" under FRE Rule 201, "under Second Circuit law, a district court is prohibited from taking notice of the documents for the truth of the matters asserted therein." *In re Eur. Govt. Bonds Antitrust Litig.*, 2022 WL 2168358, at *3 (S.D.N.Y. June 16, 2022) (denying motion to dismiss). Here, Primavera improperly seeks to have this Court take notice of his extrinsic evidence for the "truth of the matters asserted therein."

*First*, Primavera cites the TCA Complaint and the Administrative Order to purport to show the "location" of TCA, arguing that these documents state that "TCA is a Florida corporation formed in June 2011 and headquartered in Aventura [Florida]." Def. Br. at 4 (citing Lawlor Decl., Exs. A and B). Primavera also cites to the TCA Complaint and the Administrative Order to show that "there is no mention of the conduct of TCA's New York office" in these documents. *Id*. at 4, n.1. Primavera cites to these extrinsic and irrelevant materials in an attempt to divert the Court's attention from the indisputable fact that all of Primavera's wrongful conduct that is the subject of this suit took place in New York.

*Second*, Primavera also cites to the TCA Complaint and the Administrative Order to show that there is purportedly an "unavoidable" "nexus" between these documents and Primavera's "defamatory utterance" which provides the utterance "immunity" from this lawsuit. Def. Br. at 7. This argument as well requests that the Court take notice of the "truth" of the extrinsic evidence, namely that the allegations stated in the TCA Complaint and Administrative Order truthfully occurred, and are connected to Primavera's defamatory statements about Press.

*Third*, Primavera cites the Primavera Emails to "belie the notion that [Primavera's] statement to the SEC was spontaneous or unsolicited." Def. Br. at 6. This unquestionably is asserted for the truth of the matter asserted, as Primavera tries to wiggle out of the defamatory

nature of his statement based on a story he concocts from the text of these selected emails. Indeed, Primavera even argues without any proof that "no countervailing evidence exists" (Def. Br. at 6), further demonstrating that he is seeking to use his extrinsic and untested documents to assert the truth of its contents. This Court should not take judicial notice of any of Primavera's extrinsic evidence.

Taking judicial notice of Primavera's extrinsic evidence is further inappropriate because the facts in the evidence are "subject to reasonable dispute," as they cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE Rule 201(b); *see also Commodity Futures Trading Commn. v. Gorman*, Comm. Fut. L. Rep. P. 35106 (S.D.N.Y. Feb. 28, 2022) (denying motion to dismiss and ignoring disputed extrinsic evidence).

As stressed by the Advisory Committee Notes to FRE Rule 201, the "tradition" of taking judicial notice is "one of caution" and "circumspection" and thus requires that "the matter be beyond reasonable controversy" in order to be noticed. FRE Rule 201, Advisory Committee Notes (this "circumspection appears to be soundly based, and no reason to depart from it is apparent"). Indeed, the "rule proceeds upon the theory" that a court should "dispens[e] with traditional methods of proof only in clear cases." *Id.*; *see also Thompson v. Ameriflex*, 2013 WL 866863, at *1 (S.D.N.Y. Mar. 7, 2013) (refusing to take judicial notice of "facts" that were "not the type of indisputable facts subject to judicial notice" under FRE Rule 201).

Here, Primavera's extrinsic evidence is undeniably "subject to reasonable dispute," despite his self-serving and unsupported claim that the "accuracy of [the TCA Complaint and the Administrative Order] cannot reasonably be questioned." Def. Br. at 3. The TCA Complaint contains unproven allegations of the SEC, and thus the court "cannot take notice of (and so assume the truth of) mere allegations" therein. *See Nolte v. Capital One Fin. Corp.*, 390 F.3d

311, 317 (4th Cir. 2004) (refusing to take judicial notice of SEC complaint because "[a]lthough the filing of an SEC complaint against [party] is indisputable, the facts alleged therein are not"). Moreover, there was never any finding made on the merits or any allegations in the TCA Complaint as TCA subsequently entered into a settlement agreement with the SEC "[w]ithout admitting or denying the allegations of the [TCA] complaint," further evincing that the accuracy of the TCA Complaint remains unproven and disputable. *See Securities and Exchange Commission v. TCA Fund Management Group Corp., et al.*, Index No. 20-cv-21964, ECF No. 6-1 (May 11, 2020). The TCA Complaint is not proof, much less conclusive proof, of any of the allegations set forth therein.

The accuracy of the Administrative Order is also unproven and disputable. Indeed, the plain terms of the Administrative Order make clear that the facts therein are "[s]olely for the purpose of these proceedings" and Press specifically agreed to settle the issue "without *admitting*" the findings therein. *See* Lawlor Decl., Ex. B, at 2 (emphasis added).

Primavera does not, and cannot, claim that the Primavera Emails are accurate. *See* Def. Br. at 3 (only arguing, albeit incorrectly, that the "accuracy" of the TCA Complaint and the Administrative Order, and not the Primavera Emails, "cannot be reasonable questioned"). To the contrary, Primavera further acknowledges that the Primavera Emails merely consist of "[r]edacted versions of selected e-mails" (Def. Br. at 6, n.4), and thus do not necessarily reflect an accurate picture of the conversations contained therein.

Further, the very fact that Primavera seeks to make legal conclusions from the Primavera Emails to settle disputed issues, namely, choice of law and the spontaneity of his libelous declaration (Def. Br. at 5-6), demonstrates that the emails are "subject to reasonable dispute." *See Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *5 (S.D.N.Y. Aug. 28, 2019)

(no "judicial notice of a legal conclusion" because "such a conclusion is not the type of 'fact that is not subject to reasonable dispute' contemplated by Federal Rule of Evidence 201(b)"). This Court should thus not take judicial notice of Primavera's extrinsic evidence.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully submits that this Court deny Primavera's motion to dismiss in its entirety, and grant Plaintiff any further relief that the Court deems just and proper.

Dated: New York, New York
September 30, 2022

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:      /s/ Albert Shemmy Mishaan
    Marc E. Kasowitz
      (mkasowitz@kasowitz.com)
    Albert Shemmy Mishaan
      (amishaan@kasowitz.com)
    Sondra D. Grigsby
      (sgrigsby@kasowitz.com)
    Jeffrey Ephraim Glatt
      (jglatt@kasowitz.com)
    1633 Broadway
    New York, New York 10019
    (212) 506-1700

    *Attorneys for Plaintiff Robert D. Press*