UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT D. PRESS,

                      Plaintiff,

-against-

PATRICK J. PRIMAVERA,

                      Defendant.

Case No. 1:21-cv-10971 (JLR)

**MEMORANDUM**
**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

At present, this case is stayed by order of the Court. ECF No. 56. Plaintiff requests that the Court lift the stay. ECF Nos. 66 ("Pl. Ltr."), 67 ("Pl. Resp. Ltr."). Defendant opposes this request. ECF No. 65 ("Def. Ltr."). Plaintiff's request to lift the stay is granted.

## BACKGROUND

Plaintiff filed this action on December 21, 2021, invoking the Court's diversity jurisdiction. ECF No. 1 (the "Complaint" or "Compl.") ¶ 12. Plaintiff identified himself as the founder of TCA Fund Management Group Corp. ("TCA"), an investment firm. *Id.* ¶¶ 1, 16. Plaintiff alleged that Defendant once served as the managing director of TCA's New York office, *id.* ¶ 1, but that Defendant "voluntarily departed [TCA] in 2019," *id.* ¶ 27. Plaintiff further alleged that, on December 22, 2020, Defendant submitted a declaration to the Securities and Exchange Commission (the "SEC"), "regarding his purported experiences while working as the Managing Director for the TCA Investment Manager's New York Office." *Id.* ¶ 57. According to Plaintiff, the declaration was "false and perjurious" and "defam[ed]" him. *Id.* ¶ 8. The Complaint asserted a single claim against Defendant for defamation. *Id.* ¶¶ 64-75. On August 3, 2023, the Court denied Defendant's motion to dismiss. *Press v. Primavera*, --- F. Supp. 3d ----, 2023 WL 4978099, at *1 (S.D.N.Y. Aug. 3, 2023). Defendant answered the Complaint on August 31, 2023. ECF No. 49.

1

On September 18, 2023, Defendant filed a letter stating that he had recently received a notice of a proposed settlement of an action brought by the SEC in the Southern District of Florida (the "Florida Action" in the "Florida Court").  ECF No. 52 at 1; *see* ECF No. 52-2 (the "Settlement Agreement").  Defendant explained that, when he reviewed the Settlement Agreement, "it came to [Defendant's] attention that the Court in Florida had imposed a blanket stay of litigation on May 11, 2020, that that stay includes this action in the SDNY, and that the stay is continuing."  ECF No. 52 at 1 (emphasis omitted); *see* ECF No. 52-1.  Defendant highlighted a provision in the Florida Court's order appointing a receiver (the "Receiver"):

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in Receiver's capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise . . . .

ECF No. 52-1 ¶ 26 (the "Florida Stay").  Defendant also noted that the proposed Settlement Agreement included a clause stating that "[t]he Receiver shall, promptly after the Effective Date[,] . . . [c]onsent to the lifting of the Court's stay to permit the prosecution of the pending action by Press against Primavera."  Settlement Agreement § 8(a).  Defendant stated his "intention to oppose the settlement in the [Florida] Action to the extent the proposed settlement agreement attempts to have that Court lift the [Florida Stay] as to this action," and he "ask[ed] this Court to honor the [Florida Stay] pending further order from that Court."  ECF No. 52 at 2.

2

On September 19, 2023, Plaintiff filed a letter responding to Defendant's letter. ECF No. 54. Plaintiff claimed that he "had no reason to inform the Court of any impact on this action, because, on its face, the stay provision of the May 11, 2020 Receivership Order does not apply to this action." *Id.* at 1. Plaintiff also stated that "[i]n or about early March 2022, the Receiver, misunderstanding the allegations in this lawsuit, approached Mr. Press's counsel regarding [the Receiver's] purported concern that the Receivership Order stayed this lawsuit, and demanded that Mr. Press immediately withdraw his Complaint." *Id.* at 2. Plaintiff further reported that:

> Because it is clear that this lawsuit does not violate the unambiguous terms of the Receivership Order, Mr. Press informed the Receiver that this lawsuit plainly falls outside of the scope of the Order, and rightfully refused to withdraw his Complaint. Apparently accepting this obvious conclusion, the Receiver did not respond to Mr. Press's counsel, and did not pursue any further action in this Court or any other to impose a stay. Nevertheless, in order to ensure that there was no ambiguity, and out of an abundance of caution, the parties in the [Florida] Action agreed to include language in the recently proposed settlement agreement in the [Florida] Action to make clear that this lawsuit is not in fact stayed.

*Id.* Plaintiff "request[ed] that this Court deny [Defendant's] request to stay in its entirety." *Id.*

After receiving a reply letter from Defendant, ECF No. 55, the Court issued an order on September 20, 2023, ECF No. 56. The Court stated that, "[w]ithout more information, the Court is not persuaded that the [Florida Stay] unambiguously does not apply here. Moreover, and importantly, as Defendant has pointed out, the [Settlement Agreement] appears to confirm that the present action before this Court is stayed." *Id.* at 1-2. The Court also observed that "[i]t would clearly be very problematic if Plaintiff proceeded with this matter before the Court in contravention of a stay issued by the Southern District of Florida." *Id.* at 2. The Court

3

therefore ordered that "this case is temporarily stayed in order to determine whether this action was stayed by Order of the Southern District of Florida." *Id.*

On September 25, 2023, Defendant filed objections to the proposed Settlement Agreement ahead of a final approval hearing scheduled for October 25, 2023. ECF No. 57-1. Defendant asked the Florida Court to "confirm that the SDNY Action was stayed by the [Florida Stay]." *Id.* at 4. Defendant also objected to the section of the proposed Settlement Agreement stating that the Receiver would "[c]onsent to the lifting of the [Florida] Court's stay to permit the prosecution of the pending action by Press against Primavera." *Id.* (first alteration in original); *see* Settlement Agreement § 8(a). Finally, Defendant requested a copy of a directors-and-officers policy, as well as additional information about his right to indemnification by TCA. ECF No. 57-1 at 5.

In a responsive filing on October 11, 2023, the Receiver characterized Defendant's objections as "a number of grievances with various parties" rather than a proper objection, and accused Defendant of "seemingly asking [the Florida] Court to issue an advisory opinion regarding [the Florida Stay] without doing so via motion or other proper procedural mechanism." ECF No. 57-2 at 5. The Receiver stated that Defendant's objection to the language in the Settlement regarding the Receiver's "consent to the lifting of the Court's stay to permit the prosecution of the pending action by Mr. Press against Mr. Primavera" should not prevent approval of the Settlement Agreement overall. *Id.* at 5-6 (brackets omitted). Suggesting that he remains of the view that the Florida Stay covers the present action, the Receiver also pointed out that this language in the Settlement Agreement "does not preclude Mr. Primavera from objecting if Mr. Press moves this Court to lift the stay." *Id.* at 6. The Receiver finally noted that Defendant had now received the directors-and-officers policy but that, in the Receiver's view, Defendant is not entitled to indemnification because "the alleged

4

slander in the SDNY Action occurred after Mr. Primavera's employment at TCA ceased." *Id.* at 6-7.

On December 28, 2023, Plaintiff and Defendant submitted a joint status letter to this Court. ECF No. 59. Attached to their letter was an order by the Florida Court from December 21, 2023, approving the Settlement Agreement but rejecting a proposed bar order. ECF No. 59-1 at 13. In that order, the Florida Court directed the Receiver to "file a notice by January 19, 2024 indicating whether the [parties to the Settlement Agreement] intend to proceed with the Settlement Agreement" given the rejection of the proposed bar order. *Id.* (emphasis omitted). The Florida Court also acknowledged that "Primavera is defending a case brought by Press in the Southern District of New York and expresses concerns about the applicability of the [Florida Stay] to that case." *Id.* at 6 n.2. The Florida Court did not address these concerns or provide the clarification requested by Defendant. Instead, it concluded that Defendant's objections were "not in fact objections to the Settlement Agreement," but instead "grievances with various parties." *Id.* at 8. The Florida Court therefore declined to address them "[b]ecause these grievances [we]re either irrelevant, improper, or premature." *Id.*

In their December 28, 2023 joint letter, Plaintiff and Defendant advised the Court of their differing views on next steps. Defendant asked the Court to "continue the stay pending a further, final order from the Florida court." ECF No. 59 at 2. Plaintiff disagreed and asked for the stay to be lifted. *See id.* at 3. In an order on December 29, 2023, the Court stated that, "[b]ecause the Receiver has not yet filed a notice with the Florida court as to the Settlement Agreement, this Court shall keep the stay in place for now." ECF No. 60 at 1 (citation omitted). The Court directed Plaintiff and Defendant to "file a joint letter with an update

concerning the proceedings in the Florida court no later than January 22, 2024, or within three days after the Receiver files such notice, whichever is sooner." *Id.*

In a joint letter submitted on January 22, 2024, Plaintiff and Defendant reported that the Settlement Agreement had not been effectuated because the parties to the Settlement Agreement "could not agree to waive the requirement of the Settlement Agreement that the Bar Order be entered as proposed." ECF No. 61 at 1 (quotation marks omitted). Plaintiff and Defendant requested "a brief three-week adjournment . . . until February 12, 2024, to advise the Court as to whether the parties have reached an agreement regarding whether the stay should remain in place or propose a schedule for briefing the issue." *Id.* The Court granted this request. ECF No. 62. On February 12, 2024, Plaintiff and Defendant submitted a joint letter proposing a schedule for letter briefing as to whether the stay in this case should be lifted. ECF No. 63. The Court approved the schedule, ECF No. 64, and the parties have submitted their letter briefs, Def. Ltr.; Pl. Ltr.; Pl. Resp. Ltr.

## DISCUSSION

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Relevant considerations include "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (citation omitted); *accord Royal Park Invs. SA/NA v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 298-99 (S.D.N.Y. 2018). Of course, these factors are guides to the district court's discretion, not a rigid test requiring mechanical operation. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).

At the outset, the Court rejects Defendant's suggestion that dismissal of the present action without prejudice would be proper. *See* Def. Ltr. at 5. To be sure, "[a]s between federal district courts, . . . the general principle is to avoid duplicative litigation," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and "a district court may stay or dismiss a suit that is duplicative of another federal court suit," *Curtis*, 226 F.3d at 138. "[F]or the rule [against duplicative litigation] to be properly invoked, however, the [second] case must be the same [as the first]." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quotation marks and citation omitted). In other words, "there must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Id.* (brackets omitted) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)). Defendant concedes, and the Court agrees, that "there is no exact duplication of the issues in the [present action] and the Florida Action." Def. Ltr. at 4. Indeed, there are several obvious differences between the two actions, including different parties, different rights asserted, and different relief sought. Therefore, the rule against duplicative litigation does not apply and the Court will not dismiss this case, although the rule's underlying policies of efficiency and comity inform the Court's analysis more generally. *See Kappel*, 914 F. Supp. at 1058.

As Defendant aptly notes, the Court is faced with "the sticky question" of the impact on this action of another court's stay order in a previously filed action. Def. Ltr. at 3. The Court temporarily stayed this case on September 20, 2023, without conclusively deciding the applicability of the Florida Stay, because Defendant represented that he would "immediately" raise the issue with the Florida Court. ECF No. 56 at 2. Defendant did so: during the approval process for the Settlement Agreement, he sought clarification from the Florida Court

7

as to whether the present action falls within the Florida Stay.  The Florida Court, however, did not provide such clarification.  For his part, Plaintiff has not moved the Florida Court to lift or provide other relief as to the Florida Stay, presumably because he does not believe that the Florida Stay covers the case at bar.  Because the Florida Court has, to date, declined to offer direction as to whether the present action falls within the Florida Stay's scope, this Court must endeavor to answer that question itself.

The Florida Stay requires some deciphering.  Without question, the case at bar is a "civil legal proceeding[]."  ECF No. 52-1 ¶ 26.  Although both Plaintiff and Defendant fall within the definition of TCA's "past or present officers, directors, managers, agents, or general or limited partners," the Florida Stay's use of the word "sued" suggests that the relevant person must be a defendant (to an initial claim or, potentially, to a counterclaim or a crossclaim) in the putatively covered proceeding – and Defendant so qualifies here.  *Id.*; *see Defendant*, Black's Law Dictionary (11th ed. 2019) (a defendant is a "person *sued* in a civil proceeding" (emphasis added)); *cf. Plaintiff*, Black's Law Dictionary (11th ed. 2019) (a plaintiff is a "party who *brings a civil suit* in a court of law" (emphasis added)).  The question is therefore whether the alleged conduct giving rise to the claim against Defendant – his declaration to the SEC on December 22, 2020, *see* Compl. ¶¶ 64-75 – was an "action taken by [Defendant] while acting in [his] capacity" as an officer of TCA, ECF No. 52-1 ¶ 26.  Given that Defendant "voluntarily departed [TCA] in 2019," Compl. ¶ 27, the best reading of the Florida Stay (at least without further clarification from the Florida Court) is that it does not encompass the present action because it concerns statements that Defendant made outside his capacity as an officer of TCA.

Defendant does not clearly argue to the contrary – that is, Defendant does not contend that he was acting in his capacity as a TCA officer when he submitted his declaration to the

8

SEC in December 2020. Instead, he argues that the present case "arises directly out of [his] employment with [TCA]." Def. Ltr. at 2. But even if the present case "arises directly out of" Defendant's employment, *id.* – something that the Court need not decide here – that is not the standard set forth by the Florida Stay. Although Defendant's declaration to the SEC may have discussed his "purported experiences while working as the Managing Director for the TCA Investment Manager's New York Office," Compl. ¶ 57, the declaration itself was not an "action taken by [Defendant] while acting in [his] capacity" as an officer of TCA, ECF No. 52-1 ¶ 26, because by December 2020, Defendant was no longer an officer.

It is true that, as the Court previously observed, the Settlement Agreement "appear[ed] to confirm that the present action before this Court is stayed," ECF No. 56 at 2, because it required the Receiver to "promptly . . . [c]onsent to the lifting of the Court's stay to permit the prosecution of the pending action by Press against Primavera," Settlement Agreement § 8(a). Moreover, comments by the Receiver as recently as October 2023 seem to reflect his understanding that the Florida Stay encompasses the case at bar. *See* ECF No. 57-2 at 5. But the Receiver's views and the inclusion of language in an abandoned settlement agreement are not determinative. The present action does not seem to fall within the plain language of the Florida Stay and therefore, absent direction from the Florida Court, the Court will not continue to stay the present action.

The Court acknowledges that ensuring consistency between the present proceedings and the Florida Action implicates "the interests of the courts" in efficiency and comity and may also implicate "the interests of persons not parties to [this case]" and "the public interest." *Kappel*, 914 F. Supp. at 1058 (citation omitted). Nonetheless, given that the Florida Stay does not appear to cover this action and the Florida Court has not advised otherwise, lifting this Court's stay would be neither inefficient nor contrary to comity. Meanwhile, given

9

that this action is not duplicative of the proceeding in Florida, Defendant identifies no reason that lifting the stay of this action would impair his interests in the relevant sense. On the other hand, further delaying this case (filed well over two years ago) prejudices Plaintiff's ability to pursue his claim and undermines the systemic interest in prompt adjudication of disputes. *See* Fed. R. Civ. P. 1.

The Court remains troubled by the fact that Plaintiff did not inform the Court (or, apparently, Defendant) about the Florida Stay or Plaintiff's March 2022 communications with the Receiver. *See* ECF No. 56 at 2. The present convoluted procedural diversion has consumed significant time and energy for all involved. But Plaintiff's lack of candor aside, as "[t]he proponent of [this Court's] stay," Defendant "bears the burden of establishing its need." *Clinton*, 520 U.S. at 708. Given the language of the Florida Stay and the lack of contrary direction by the Florida Court, Defendant has not satisfied that burden here, so the Court shall lift the stay of this case.

## CONCLUSION

The Court GRANTS Plaintiff's request to lift its stay of this case. Within **seven (7) days** of this memorandum opinion and order, the parties shall jointly submit a proposed amended case-management plan.

Dated: April 15, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge